J. E. HAYNER *et al.* v. C. H. TROTT AND JOSEPHINE BLAKELY, *as Administrators of the Estate of Wm. S. Blakely, deceased.*

### No. 94.

CONTRACT — *Sale of Machinery — Agent's Commissions.* In 1884 and 1885, B. entered into contracts in writing with J. E. H. & Co. to sell certain machinery, as their agent at J. C., upon certain commissions for said years; the contract expressly stipulated for the manner of selling and paying commissions: (1) For cash, and commission in cash; (2) upon credit, and commission payable in notes; (3) upon part credit and part cash, and commission payable in part cash and part notes; it further stipulated that B. should refund any commissions allowed on notes that might afterward prove to be worthless or otherwise uncollectible. *Held,* That, under the terms of this contract, J. E. H. & Co. could only recover back such commissions as B. had received in cash, or for which he had collected the notes taken by him for such commis-

sions upon the sales for which J. E. H. & Co. held uncollectible or worthless notes; and *held* further, that, upon the death of B. the contract terminated, and that, as all the machinery sold in 1885 was sold after the death of B. and before his administrators took charge of his estate, the mere fact that the administrators received a commission upon the sales so made is not sufficient to make the estate liable to refund commissions.

MEMORANDUM.— Error from Geary district court; M. B. NICHOLSON, judge. Action by J. E. Hayner, Augustine K. Root, and Frederick W. Drury, partners as J. E. Hayner & Co., against C. H. Trott and Josephine Blakely, as administrators of the estate of Wm. S. Blakely, deceased, to recover commissions paid. Judgment for defendants. Plaintiffs bring the case to this court. Affirmed. The opinion herein was filed September 12, 1896.

The statement of the case, as made by GILKESON, P. J., is as follows :

During the years 1884 and 1885, Wm. S. Blakely now deceased, was the local agent at Junction City, Kan., for J. E. Hayner & Co. for the sale of certain harvesting machinery, under a contract in writing made separately for each year. The terms of the contract for each year are substantially the same, and, by the terms thereof, Blakely was to receive for his services and performance of his part of the contract a commission. The amount of this commission, how, when and what it was to be paid in, are stated in the third article of the contract, which is as follows :

"3. The party of the first part will allow the party of the second part on the machines below specified the following commissions, to wit: As a consideration for transacting the business of selling, settling for, setting up and starting machines in the field, and otherwise fulfilling the conditions herein required and specified, said consideration to be paid in the same

proportion as to money and notes as the same are received : if the sale be made for ' all cash,' the whole amount of the commission shall be retained in cash ; if part money and part notes are received, the com · mission shall be paid in like manner ; if made for all notes, then the whole amount of commission shall be paid in notes. The notes for payment of commissions (when payable in notes) to be selected by the party of the first part, or their authorized agent, and to be of average maturity of all the notes taken."

It is also provided in article 9 of said contract, among other things, that the party of the second part is "to carry out and be governed by the ' conditions and instructions' hereto annexed, and the same are hereby made a part of this agreement." Under that part of the contract called "conditions and instructions" appears the following stipulation : "The party of the second part agrees to refund any commission allowed on notes that may afterward prove to be worthless or otherwise uncollectible." In the contract of 1885, the refunding commission clause is as follows : "And if any notes cannot be collected, in whole or in part, within one year after maturity, party of the second part agrees to refund to the party of the first part the amount of commission that shall have been allowed on the amount uncollected."

During the year 1884, and under the contract for that year, Blakely sold a number of harvesters and binders for plaintiffs, taking notes therefor, which were turned over to ·J. E. Hayner & Co. as proceeds of sales made by him under · said contract. · On the 11th day of June, 1885, Blakely died, and one G. F. Gordon assumed temporary charge of the Blakely business to preserve and protect the property.

On the 25th day of June, 1885, C. H. Trott and Josephine E. Blakely were appointed administrators

of the estate.    After the death of Blakely certain machines were sold which were on hand during his lifetime, and notes taken therefor, which were turned over to J. E. Hayner & Co. as the proceeds of such sales.    Some time in 1887 J. E. Hayner & Co. filed in the probate court a claim against the estate to recover, under the refunding-commission clause in said contract, certain commissions claimed to have been paid to Blakely during his lifetime and to his estate since his death on notes that had proved worthless and uncollectible.    This claim was disallowed by the probate court, and from the decision J. E. Hayner & Co. appealed to the district court.    Upon a trial had therein before the court without a jury, the court found in favor of the estate and against the company. A motion for a new trial was filed, overruled, and exceptions taken.    Plaintiffs bring the case here for review.

*Thomas Dever*, for plaintiffs in error.
*J. R. McClure*, for defendants in error.

The opinion of the court was delivered by

GILKESON, P. J.:  The plaintiffs in error contend that, under the terms of the contract of 1894, the estate of W. S. Blakely should pay them 20 per cent. upon all the uncollected notes taken by Blakely for sales of machinery during that year, upon the theory that he was allowed that amount of commissions upon sales made by him ; that these notes were uncollectible and worthless, and that it is immaterial whether he received this commission or not, or how he received it—whether in cash, notes, or part cash and part notes. In other words, that he became a guarantor of these notes to that amount.    We cannot agree with them

upon this contention for two reasons : (1) The contract itself precludes the idea of guaranty, as it provides what notes he should guarantee, and none of these comes within that .class ; (2) the terms of the contract will not admit of such a construction.   It is provided therein that the machinery shall be sold in three ways, and that commissions shall be paid in the same manner as the sales are made, viz. : (1) Upon credit, commission to be paid in notes ; (2) for part credit and part cash, commission to be paid in part notes and part cash ; (3) for cash, commission to be paid in cash.

Now, as we understand this contract, when the sale is made upon credit and the notes taken therefor prove worthless, and it is shown that the agent had collected the note he received as his commission for such sale, he must refund the amount of the commission. When made for part cash and part credit, if the notes taken prove worthless, uncollectible, and it is shown that for this sale the agent received his commission in. like manner, if he has collected the note received, he must refund the amount thereof, provided that the notes held by the company prove worthless.   And there is a reason for these conditions being placed in the contract.   The company by this means makes it an object for the agent to collect their notes first, or at least to exercise as much diligence in their behalf as he does in his own.   When made for cash the transaction is complete.   But to hold that, where the agent takes notes for his commission, either in whole or in part, and. the notes so taken by him, like those turned in to the company, prove worthless and uncollectible, he must pay the notes he has taken and turned over, would be doing violence to every principle of common sense and justice, and would be simply

construing this contract to mean that the agent was to pay the principal 20 per cent. commission for the privilege of handling the machinery, and would not fall within the meaning of the term "refund," which always includes the idea of something having been received. As we have said, when the sale is made for cash the transaction is complete — the agent turns over to the company their proportion and retains his. This idea receives additional force from the very terms of the refunding clause: "The party of the second part agrees to refund any commissions allowed on notes that may afterward prove worthless or otherwise uncollectible." Is there anything in this language from which it can be inferred that he is to hold his cash commissions as a fund to make good deficits in commissions on uncollectible notes? We think not. He is merely to refund the commissions allowed upon the uncollectible notes. If this were not so, and the construction given, as claimed by the plaintiffs in error, should be adopted, we can readily conceive of circumstances arising in which the agent would be compelled to return to the company a much larger amount than he received from his year's business.

Suppose he sold 50 machines at $100 each: this would be $5,000. Upon this amount he would be allowed, at 20 per cent., $1,000. Now, 15 of these machines were sold for cash; being $1,500. His commission would be $300. On 35 sold on credit for $3,500 and notes taken his commission would be $700. He received his commission under the contract: cash, $300; notes, $700. But the notes for $3,500 are not paid. Must he then refund $700 in cash, or $400 more than he received? We think not. Under no circumstances can he be required to refund money unless he has received money as

his commission on the identical notes uncollected. The company cannot compel him to refund the amount of a note by merely alleging that it was received as a commission.    In order to recover under any circumstances, they must prove that he received money as his commission, or collected the note received as his commission upon notes claimed to be uncollectible ; for he is only " to refund commissions allowed upon notes that have proved worthless or otherwise uncollectible." There must be an identification.    This they have failed to make.    There is not a scintilla of evidence in the record showing that he ever received any money commissions on any of the notes or that he ever collected any of the notes he received as his commissions on these sales.

The second contention is, that the estate is responsible for and must respond in money to the company for the notes taken for machinery sold in 1885, and which the company have been unable to collect.    In addition to what we have said with reference to the contract of 1884, we will add that the court found the following :

" 7. Wm. S. Blakely died on the 11th day of June, 1885, and G. F. Gordon assumed temporary charge of the Blakely hardware store, to preserve and protect the property, and on the 25th day of June, 1885, C. H. Trott and Josephine Blakely were appointed by the probate court administrators of the estate of Wm. S. Blakely, deceased."

And it further found that,

" after the death of Blakely, and before the administrators took charge of the assets of the estate, all the machinery sold in 1885 was sold by parties who were in the employ of Blakely during his lifetime, notes taken therefor and turned over to Hayner & Co., and that the administrators were paid in notes taken for

other machinery, the commission on the sales of the machinery for which the uncollectible notes were taken. All of this was done without any order or authority from the probate court of Davis county, and the testimony shows that some of these sales at least were made under the express direction of a special agent of Hayner & Co.''

While it is true, and the court so found, that the machinery sold was received by Blakely during his lifetime, and was on hand at the time of his death, did it ever become assets in the hands of the administrators ? We think not. The contract is strictly personal. It does not extend. to the heirs, executors or administrators of Blakely.

''The death of the agent terminates the agency,'' and the only exception to this rule is where the power or authority in the thing is actually vested in the agent, and the reason for this exception is that the agent, having the legal title to the property vested in himself, is capable of transferring it in his own name, notwithstanding the death of his principal. No such title was vested in Blakely. The contract expressly provides that ''the title and ownership of this property remains in the principal until disposed of under the provisions of this contract.'' The only interest Blakely had in it was to receive commissions. The notes were all made payable to the company, and the fact that a special agent of the company was there exercising acts of ownership over it, directing its sale and disposal, within a very few days after Blakely's death, strongly indicates that the company so understood this contract. All that is required of any administrator is to make an inventory of everything belonging to the estate, and to administer the same according to law. They were not authorized to take possession of this property. It is not shown that they

ever charged themselves in their representative capacities with these notes, or that they brought them into their accounts with the estate, or that they were made subject to the decree of the probate court, or that the estate had any use thereof or derived any benefit therefrom. The mere fact that they received commissions on the sales made is not sufficient to render the estate liable.

The record presented in this case is very imperfect. It is difficult to tell what it purports to contain, except all the evidence. It fails to show that it is a full record of all the proceedings had.

The judgment of the district court will be affirmed.

All the Judges concurring.